**SO ORDERED.**

**SIGNED this 20th day of November, 2026.**

Mitchell L. Herren
Chief United States Bankruptcy Judge

---

*Designated for online publication*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:**<br><br>**Anita L. Vara,**<br><br>**Debtor.** | **Case No. 25-10960**<br>**Chapter 11** |

## Memorandum and Order Granting in Part and Denying in Part the Second and Final Application for Allowance and Payment of Attorneys' Fees and Expenses (Doc. 95)

Both a Chapter 11 debtor and that debtor's attorney have significant disclosure requirements throughout a Chapter 11 case. The debtor must make preconfirmation monthly operating reports via 11 U.S.C. § 1184, § 1106(a)(1), § 704(a)(8), and Federal Rule of Bankruptcy Procedure 2015(a)(3).[1] The debtor's

---

[1] *See* 11 U.S.C. § 1184 (the Subchapter V debtor in possession has the rights and duties of a Chapter 11 trustee); § 1106(a)(1) (a Chapter 11 trustee is required to perform the duties required by § 704(a)(8)); § 704(a)(8) (requiring periodic reports and summaries of the

attorney must report all compensation paid or agreements concerning compensation to be paid via § 329(a) and Rule 2016(b).[2]

Before the Court is Debtor's Second and Final Application for Allowance and Payment of Attorneys' Fees and Expenses.[3] The U.S. Trustee alleges that postpetition deposits Debtor Anita L. Vara made to her counsel's trust account were postpetition, attorney-fee retainers, and because those retainers were not timely disclosed as required by Rule 2016(b), the law firm's fee application should be denied (and the transferred retainers disgorged). The record established at the evidentiary hearing, however, does not support a finding that the deposits to the trust account were retainers. Rather, the evidence shows the law firm encouraged Debtor to use her counsel's trust account like a bank savings account. As a result, the law firm did not fail in its disclosure requirements under Rule 2016(b), because Debtor's deposits were not a new compensation agreement under that Rule. However, the law firm enabled Debtor's failure to comply with her reporting requirements.

The Court does not deny the requested fees or order disgorgement of previously awarded fees based on the U.S. Trustee's allegation of a Rule 2016(b)

---

business of the debtor); Fed. R. Bankr. P. 2015(a)(3) (duty to file "the reports and summaries required by § 704(a)(8)"). All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code. Future references to the Federal Rules of Bankruptcy Procedure will be to Rule and number only.

[2] § 329(a) (attorney representing a debtor must file with the court a "statement of compensation paid or agreed to be paid . . . "); Rule 2016(b) (governing the basic requirements and supplemental statements required for disclosure of compensation paid or promised to a debtor's attorney).

[3] Doc. 95.

reporting failure. But after its review of the fee application, the Court concludes $3995.20 of the requested fees should be denied. The Court also places limits on future fee requests in this case. Therefore, the U.S. Trustee's objection[4] is overruled, and the fee application[5] is granted in part and denied in part.

## I. Findings of Fact

Mark J. Lazzo, of Mark J. Lazzo P.A., is an attorney whose practice has focused mainly on bankruptcy since 1986. About half of Mr. Lazzo's current bankruptcy practice is in Chapter 11 cases. Mr. Lazzo charges $350 per hour.

The law firm of Mark J. Lazzo, P.A. was retained by Anita L. Vara in April 2024. The fee agreement was for payment of an hourly rate, and Ms. Vara paid a $5000 retainer. She was being pursued on guarantees she provided for two businesses of which she was a principal, Metro Courier, Inc. and Wilson Building Maintenance, Inc. Mr. Lazzo initially focused on the reorganization of the business debts, and both entities filed a Chapter 11 case of their own. Ms. Vara had liquidated personal real property to fund the businesses and make payments on her unsecured debt, and there would be substantial capital gains taxes. Mr. Lazzo's plan was to then file an individual Chapter 11 case for Ms. Vara due to her tax debt and to do so within ninety days of the unsecured debt payments she had made in order to place her in a position to recoup those payments as statutory preferences.[6]

---

[4] Doc. 98. The U.S. Trustee appears by John Nemecek.

[5] Doc. 95. Debtor appears by Justin T. Balbierz and Mark J. Lazzo of Mark J. Lazzo, P.A.

[6] § 547(b) (permitting the avoidance of certain preferential transfers made "on or within 90 days before the date of the filing of the petition").

On September 8, 2025, Debtor filed her individual Chapter 11 subchapter V petition. Mr. Lazzo testified that from the date of filing he estimated Debtor's eventual plan payment would be about $5000 a month. In the Statement of Financial Affairs supporting her petition, Debtor disclosed a payment of $11,738 to Mr. Lazzo in August 2025 for "[a]ttorney retainer and filing fee."[7] The Disclosure of Compensation filed with the petition, however, stated Mr. Lazzo had "agreed to accept and received a retainer" of $11,850 from Debtor.[8] Mr. Lazzo explained that the discrepancy occurred because the law firm had asked for an additional $10,000 retainer plus the filing fee, and still had $1850 from the original $5000 retainer, and so only the $10,000 and the $1850 were reported because the Disclosure of Compensation asks what was received "for legal services" and the filing fee was not for legal services.

On the same date as the filing of the petition, Debtor filed an Application to Employ, seeking to employ Mr. Lazzo and Justin Balbierz of Mark J. Lazzo P.A. as counsel in her bankruptcy case.[9] Mr. Lazzo testified that no new fee agreement was executed after the petition date. In the Application to Employ, Debtor stated that prior to filing she paid the law firm "a pre-filing retainer of $13,588.00."[10] This time,

---

[7] Doc. 1 p. 53.

[8] *Id.* p. 60. At the evidentiary hearing, the U.S. Trustee for the first time raised issues concerning the adequacy of the law firm's disclosures based on its alleged involvement in prepetition state court litigation concerning Debtor. The Court informed the parties it would not consider a new issue not previously raised and makes no fining herein on the adequacy of the law firm's disclosures in its Application to Employ.

[9] Doc. 10.

[10] *Id.* p. 1.

the law firm did not distinguish between what was paid for legal services and the payment of the filing fee, and called the total amount it had on hand at filing a retainer (the recent $10,000 retainer, the $1738 for the filing fee, and the remainder $1850 from the original $5000 retainer). The Application then stated: "From these funds, $7,807.00 was applied pre filing to pre-petition invoices for fees and expenses and $1,738.00 was applied to the Chapter 11 filing fee which reduced the retainer balance to $4,043.00 at the time of filing, with no monies owed to Mark J. Lazzo P.A."[11] Counsel then filed a Motion to Allow Monthly Payment of Fees and Expenses to Debtor's Counsel, seeking payment in accordance with the regular billing cycle of the law firm, pursuant to D. Kan. LBR 2016.1, which allows employed professionals to file a motion for monthly payment of fees and expenses but requires no less than ten percent be held back in trust pending Court approval of an interim or final fee application. No objections were filed to the Application or the Motion, and Orders were entered granting both.

On January 22, 2026, counsel filed a First Interim Application for Allowance and Payment of Attorney Fees and Expenses ("Interim Application").[12] The Interim Application sought approval and allowance of fees of $23,870 and expenses of $1232.12 (totaling $25,102.12) for the period of September 9, 2025, through December 22, 2025, and authority for payment by Debtor of the portion of the allowed fees not previously paid, referring to paragraph six of the Interim

[11] *Id.*

[12] Doc. 58.

Application, which states: "Per the Monthly Payment Order, counsel has received: (a) post-filing payments from Debtor in the amount of $9,000.00 towards the post-filing fees and expenses; and (b) $4,043 from Debtor's pre-filing retainer towards the post-filing fees and expenses, all subject to the Court's approval of this Application."[13] No objections were filed to the Interim Application and an order was entered granting it.[14]

After Debtor's plan was confirmed in May 2026,[15] counsel filed this Second and Final Application for Allowance and Payment of Attorneys' Fees and Expenses ("Final Application").[16] The Final Application seeks:

> [A]n Order allowing, on a final basis, administrative expenses as follows: (a) attorney fees and expenses of Debtor's counsel incurred for the time period beginning January 5, 2026 through May 20, 2026 in the amount of $29,468.74; and (b) the attorney fees and expenses previously allowed herein on an interim basis.[17]

The total of $29,468.74 in the Final Application is made up of $28,720 in fees and $748.74 in expenses, and the Final Application states it is supported by an itemization. Regarding the Interim Application, the Final Application (incorrectly)

---

[13] *Id.* p. 2 ¶ 6.

[14] *See* Doc. 69.

[15] Post confirmation, counsel filed a Motion for Final Decree, Doc. 91, and a Motion for Entry of Chapter 11 Discharge, Doc. 93. As the U.S. Trustee pointed out in its objection to each, Doc. 97, because Debtor's case was confirmed nonconsensually under § 1191(b), the motions were premature because Debtor would not be eligible for a discharge and final decree until completion of plan payments under § 1192. The Court subsequently entered Agreed Orders on the motions, *see* Doc. 103 and Doc. 104, denying the motions without prejudice.

[16] Doc. 95.

[17] *Id.* p. 1.

states: "There has been one (1) prior Order entered herein allowing interim fees and expenses to Debtor's Counsel in the aggregate amount of $25,172.12 [sic] (Dkt. No. 69)."[18] The Final Application is then supported by invoices itemizing the law firm's fees and expenses from January 2026 through April 2026, but not the May 2026 invoice.[19]

The U.S. Trustee objected to the Final Application on multiple bases. First, the U.S. Trustee noted the amounts requested in the attached invoices did not total the amount requested, as the May 2026 invoice was not attached.[20] That error was later corrected via a Supplement,[21] and that portion of the U.S. Trustee's objection in no longer at issue. The U.S. Trustee also argued that based on its review of Debtor's monthly operating reports, the law firm had not disclosed at least $25,000 in postpetition retainer payments from Debtor. The U.S. Trustee's objection sought total denial of the Final Application and the return of all postpetition retainers received by the law firm from Debtor.

Section 6 of Official Form 425C, to be used for monthly operating reports, asks the following about Professional Fees:

> 28. How much have you paid this month in professional fees related to this bankruptcy case?

---

[18] *Id.* p. 1 ¶ 4. The correct figure for the total from the Interim Application should have been stated as $25,102.12. At the evidentiary hearing, Mr. Lazzo acknowledged Debtor's plan was confirmed nonconsensually under § 1191(b), and so therefore, Debtor's case would remain open until plan payments are completed. The law firm anticipates that the "Final Application" is therefore, not final.

[19] *See id.* Ex. A.

[20] Doc. 98 p. 3.

[21] Doc. 99.

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?

30. How much have you paid this month in other professional fees?

31. How much have you paid in total other professional fees since filing the case?

A review of the monthly operating reports filed by Debtor to date shows the following:

| Reporting Period | Date filed | Professional Payments Revealed |
|---|---|---|
| September 2025 | Doc. 34, 10/27/2025 | |
| October 2025 | Doc. 43: 11/18/2025 | States $5000 paid this month in professional fees.[22] |
| November 2025 | Doc. 44: 11/25/2025 | States $5000 paid in professional fees since case filing. |
| December 2025 | Doc. 62: 2/11/2026 | States $5000 paid this month in professional fees[23] and $20,000 paid since case filing. |
| January 2026 | Doc. 63: 2/11/2026 | States $5000 paid this month in professional fees[24] and $25,000 paid since case filing. |
| February 2026 | Doc. 74: 3/4/2026 | Zero reported in professional fees paid this month or in fees paid since case filing.<br>Check images reveal $5000 paid to Mark Lazzo Trust on 1/23/2026.[25] |
| March 2026 | Doc. 85: 4/16/2026 | Zero reported in professional fees paid this month. |

[22] The attached check images to Debtor's bank statement show a check for $5000 paid to "Mark Lazzo Trust" on October 8, 2025. Doc. 43 p. 15.

[23] The attached check images to Debtor's bank statement show a check for $5000 paid to "Mark Lazzo Trust" on November 28, 2025. Doc. 62 p. 13.

[24] The attached check images to Debtor's bank statement show a check for $5000 paid to "Mark Lazzo Trust" on December 19, 2025. Doc. 63 p. 13.

[25] Doc. 74 p. 13.

| | | |
|---|---|---|
| | | Check images reveal $5000 paid to Mark Lazzo Trust on 2/27/2026.[26]<br>States $29,000 paid in professional fees since case filing.<br>Includes “Exhibit A” |
| April 2026 | Doc. 100: 6/22/2026 | Zero reported in professional fees paid this month.<br>States $29,000 paid in professional fees since case filing.<br>Includes “Exhibit A” |
| May 2026 | Doc. 101: 6/22/2026 | States zero in professional fees paid this month.<br>Check images reveal $15,000 paid to Mark Lazzo Trust on 5/21/2026.[27]<br>States $29,000 paid in professional fees since case filing.<br>Includes “Exhibit A” |

As indicated in the table above, the March through May 2026 monthly operating reports include an “Exhibit A.” The March 2026 Exhibit A states:

> Debtor’s counsel holds $51,043 in his trust account consisting of preference recoveries to date of $56,000, the remaining retainer paid pre-filing by Debtor ($4,043), post-filing Plan payments made by Debtor ($20,000) less payment of $25,107.12 to Debtor’s counsel per Court’s Order allowing first fee application entered February 17, 2026 (Dkt. 69) and less $3,897.88 to Debtor’s counsel for fees per Court’s Order permitting Monthly Fee Payments entered October 17, 2025 (Dkt. 31).[28]

The April 2026 Exhibit A states:

> Debtor’s counsel holds $67,043 in his trust account consisting of preference recoveries to date of $72,000, plus the remaining retainer paid pre-filing by Debtor ($4,043), plus post-filing Plan payments made by Debtor ($20,000), less payment of $25,107.12 to Debtor’s counsel per Court’s Order allowing first fee application entered February 17, 2026 (Dkt. 69) and less $3,897.88 to Debtor’s counsel for fees per Court’s

[26] Doc. 85 p. 14.

[27] Doc. 101 p. 20.

[28] Doc. 85 p. 5.

> Order permitting Monthly Fee Payments entered October 17, 2025 (Dkt. 31).[29]

The May 2026 Exhibit A states:

> Debtor's counsel holds $25,830.16 in his trust account consisting of preference recoveries to date of $72,000, plus the remaining retainer paid pre-filing by Debtor ($4,043), plus post-filing Plan payments made by Debtor ($35,000), less payment of $25,107.12 to Debtor's counsel per Court's Order allowing first fee application entered February 17, 2026 (Dkt. 69) and less $3,892.88 to Debtor's counsel for fees per Court's Order permitting Monthly Fee Payments entered October 17, 2025 (Dkt. 31), less Plan payments made to IRS ($55,000.00) and less Plan payment made to KDOR ($1,212.84).[30]

Although not explained, presumably the $25,107.12 in payments to Debtor's counsel approved by the Interim Application and the $3897.88 (or the $3892.88 reported in the May 2026 Exhibit A) "to Debtor's counsel" per the "Court's Order permitting Monthly Fee Payments" is the $29,000 reported by Debtor as an approximation in the monthly operating reports' Section 6 for professional fees paid in the case since filing.

After the U.S. Trustee's objection was filed, Debtor's counsel began filing "Supplemental Disclosures." First, on June 22, 2026, counsel disclosed, "pursuant to Bankruptcy Rule 2016(b)," a postpetition payment of $5000 from Debtor on that date, "representing payment towards required Plan payments and allowed attorney fees and expenses incurred in this case."[31] Then on August 3, 2026, counsel disclosed, again "pursuant to Bankruptcy Rule 2016(b)," the law firm was "paid

---

[29] Doc. 100 p. 19.

[30] Doc. 101 p. 23.

[31] Doc. 102 p. 1.

from unsecured assets of the estate the amount of $20,000 towards attorney fees and expenses" pursuant to the Court's Order permitting monthly payment of fees.[32]

Then on August 18, 2026, counsel filed a "Third Supplemental Disclosure Pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016."[33] It purported to detail all postpetition deposits made by or on behalf of Debtor into the client's trust account at the law firm, all postpetition disbursements from the law firm's trust account to the law firm operating account "on account of fees and expenses," and the source of all funds held in the trust account.[34] The Third Supplemental Disclosure purports to supplement the Final Application, the Disclosures filed with the initial Application to Employ Attorneys, and the Supplemental Disclosures recently filed on June 22 and August 3, 2026.

The Third Supplemental Disclosure only minimally parallels what was reported in the monthly operating reports or Disclosures detailed above. In the Third Supplemental Disclosure, counsel reports Debtor made the following "deposits" to the law firm's trust account: $5000 received on October 8, 2025, $5000 received on December 6, 2025, $5000 on December 26, 2025, $5000 received on January 26, 2026, $5000 received on February 28, 2026, $15,000 received on May 21, 2026, and $5000 received on June 22, 2026. Of those "deposits," only the $5000 received on October 8, 2025, exactly matches the listed payments in professional

---

[32] Doc. 108 p. 1.

[33] Doc. 112.

[34] *Id.* p. 1.

fees information from Debtor's monthly operating reports; both the January and February 2026, deposits of $5000 are close to the dates reported in the monthly operating reports for payments.[35] The $15,000 deposit from May 2026 was not reported on the monthly operating report, but was present in the bank statements supporting that monthly operating report. The $5000 from June 22, 2026, was reported in the Supplemental Disclosure filed that date as a "payment towards required Plan payments and allowed attorney fees,"[36] although now characterized as a "deposit."

The Third Supplemental Disclosure then reports the deposits were made by Debtor to the trust account for three reasons: to evidence Debtor's ability to fund her plan, to preserve funds for payments to be required under the plan, and to preserve funds for payment of allowed administrative expenses, including allowed fees and expenses of counsel. But then counsel reports that additional deposits of $72,000 in settlement proceeds from adversary proceeding recoveries were also deposited in the trust account,[37] but no reason is provided for why those funds,

---

[35] The $5000 deposit received by the law firm on January 26, 2026, is presumably the $5000 reported in the February monthly operating report with bank statements showing a $5000 check to Mark Lazzo Trust on January 23, 2026. *See* Doc. 74 p. 13. The $5000 deposit received by the law firm on February 28, 2026, is presumably the $5000 reported in the March monthly operating report with bank statements showing a $5000 check to Mark Lazzo Trust on February 27, 2026. *See* Doc. 85 p. 14.

[36] Doc. 102 p. 1.

[37] *See* Adv. No. 25-5112, with Order approving compromise at Case No. 25-10960, Doc. 64; Adv. No. 25-5113, with Order approving compromise at Case No. 25-10960, Doc. 75; Adv. No. 25-5114, with Order approving compromise at Case No. 25-10960, Doc. 50; and Adv. No. 26-5001, with Order approving compromise at Case No. 25-10960, Doc. 80.

admitted to be property of the estate,[38] were held in the trust account. The settlement funds do not appear in the monthly operating reports filed by Debtor, until the supplemental "Exhibit A" was appended to them. The deposit of the settlement funds into the trust account is provided for in the settlement agreements attached to the motions for approval of those agreements.[39]

The Third Supplemental Disclosure then reports "disbursements" from the trust account. First, the trust account paid out $61,840.52 in confirmed plan payments through August 3, 2026. These plan payments were made directly from the trust account to the creditors. Second, on March 4, 2026, the trust account "refunded" to Debtor the $5000 "deposit" made on February 28, 2026. This $5000 refund does not appear in the monthly operating reports filed by Debtor. And finally, the trust account has made six "disbursements" to the law firm's operating account for accrued fees and expenses, totaling $29,000: $2000 on October 10, 2025, $5000 on November 7, 2025, $2000 on November 26, 2025, $10,000 on January 21, 2026, $5000 on January 31, 2026, and $5000 on February 9, 2026. Of those disbursements, the law firm acknowledges the initial $2000 on October 10, 2025,

---

[38] Doc. 112 p. 3 ¶ 4 ("Those proceeds were property of the estate held in trust for the Debtor; they were not payments by the settlement defendants of, or toward, [the law firm's] compensation."). Mr. Lazzo also testified the law firm did not claim ownership of the settlement proceeds upon receipt.

[39] *See* Doc. 45 Ex. A p. 1 ¶ 1 ("The Payment shall be made by check payable to 'Mark J. Lazzo, P.A. Trust' . . . ."); Doc. 54 Ex. B. p. 1 ¶ 1 ("The Payment shall be made by check payable to 'Mark J. Lazzo, P.A. Trust' . . . ."); Doc. 65 Ex. B p. 1 ¶ 2 ("The Payment shall be made by check payable to 'Mark J. Lazzo, P.A. Trust' . . . ."); Doc. 71 Ex. B p. 1 ¶ 1 ("The Payment shall be made by check payable to 'Mark J. Lazzo, P.A. Trust' . . . .").

was improper because it was made prior to entry of the Court's Order permitting monthly compensation.

Finally, the Third Supplemental Disclosure "clarifies" information pertaining to the pre-filing retainer received by the law firm. In the law firm's Interim Application, counsel stated the law firm had received post-filing payments from Debtor of $9000 *and* $4043 from Debtor's pre-filing retainer toward the post-filing fees and expenses.[40] The Third Supplemental Disclosure states the $4043 petition date retainer balance was not an additional disbursement to the law firm.

The day after the Third Supplemental Disclosure was filed, the law firm filed a "Notice of Correction" to its January 22, 2026, Interim Application.[41] In the Notice of Correction, the law firm sought "to ensure the accuracy of the record," by noting that the law firm had not, in fact received only $9000 in "post-filing payments" from Debtor at the time of the filing of the Interim Application. Rather, at that point, the law firm had received $19,000 in payments: the $2000 on October 10, 2025, $5000 on November 7, 2025, $2000 on November 26, 2025, and $10,000 on January 21, 2026. In other words, the $10,000 paid to the law firm from the trust account on January 21, 2026, was missing from the Interim Application filed with the Court on January 22, 2026.

A few days later, counsel filed another "Notice of Correction," this time to the Third Supplemental Disclosure. In this correction, the law firm reports a "deposit"

---

[40] Doc. 112 p. 2 ¶ 6.

[41] Doc. 113.

of $5000 from Debtor to the trust account on July 27, 2026, mistakenly omitted from the Third Supplemental Disclosure.[42]

Ultimately, the Court asked the parties to brief the issues. In Debtor's Trial Brief, the law firm splits its argument into a distinction between "deposits" and "payments."[43] Regarding the "deposits"—the deposits into the law firm's trust account from Debtor's operating account—the law firm contends they were not "compensation paid" or a new or amended "agreement to pay" under § 329(a), and so therefore there were no Rule 2016(b) disclosure requirements as to those deposits. The law firm acknowledges the funds deposited in the trust account are Debtor's property until earned and applied, and contends the deposits were to be used for plan payments and payments to counsel. The law firm contends if disclosures were required as to each deposit, then there should only be a transaction-specific remedy for each individual violation because there was no improper conduct and nothing was purposefully hidden.

Counsel further notes that it directed Debtor to make the $5000 deposits because at case filing, counsel estimated monthly plan payments would be approximately that amount. In a correction to Debtor's Trial Brief, counsel notes the confirmed plan requires monthly plan payments of $4414.84.[44] Mr. Lazzo testified he began having his Chapter 11 clients make "feasibility" payments to his trust

---

[42] Doc. 117.

[43] Doc. 115.

[44] Doc. 118.

account because of his experience in prior cases having to spend time proving the feasibility of his plans; reasoning that he would be able to establish feasibility more easily with this approach by showing his clients could afford the monthly payments.

Regarding the "payments"—the payments to the law firm's operating account from the trust account—the law firm argues D. Kan. LRB 2016.1 authorizes monthly compensation of professionals, and for the payments made after the Court's Order allowing monthly compensation, the payments were authorized and no disclosure was required. The law firm also argues that because Rule 2016(b)(2) requires disclosure only of agreements to pay not previously disclosed, and the arrangement for monthly compensation was disclosed and approved, § 329 is satisfied. Mr. Lazzo testified the law firm always complied with the Local Rule and never needed to satisfy the requirement of that Local Rule that attorneys hold back ten percent of the compensation until final approval, because the law firm was always owed significantly more than the disbursements made to it.

In its brief, the U.S. Trustee focuses on disclosure failures, arguing the law firm failed to disclose postpetition payments from Debtor to the law firm's trust account and failed to disclose the receipt of $72,000 in aggregate settlement funds.[45] The U.S. Trustee argues disclosure of any payment is required by Rule 2016(b)(2) and notes the law firm acknowledges in its Third Supplemental Disclosure that Debtor's deposits to the trust account were to "'preserve funds for payment of allowed administrative expenses, including allowed fees and expenses of debtor's

[45] Doc. 114.

counsel.'"[46] The U.S. Trustee points out that the law firm's disclosures and compensation throughout the case have been confusing, and even when the law firm did make a disclosure, the disclosures were not timely.

Finally, the U.S. Trustee argues that even if the deposits from Debtor to the trust account were not intended as postpetition payments, under Kansas law an attorney has a retaining lien on all money coming into their hands professionally until the general balance for services due is paid, and so counsel had a possessory interest in the funds. Debtor filed a post-trial brief responding to that argument, noting that no attorney's lien arises under the Bankruptcy Code because compensation is owed to counsel only upon a court's final review and allowance, and funds in a trust account remain the client's funds until earned and applied.[47]

The documents filed in this case fall short of what is required by a debtor's counsel in a Chapter 11 bankruptcy case. But by piecing together the billing statements attached to the Interim Application and Final Application, along with the deposits and the disbursements set out above, the Court finds the following table of what was billed by the law firm, the deposits from Debtor into the trust

---

[46] *Id.* (quoting Third Supplemental Disclosure, Doc. 112 p. 2 ¶ 3).

[47] Doc. 120. Counsel has also continued to file "Supplemental Disclosures" after the evidentiary hearing. On September 3, 2026, September 29, 2026, and October 29, 2026, counsel disclosed "pursuant to Bankruptcy Rule 2016(b)," a postpetition payment of $5000 from the "Anita L. Oberwortmann Living Trust Corp. . . . representing payment towards required Plan payments and allowed attorney fees and expenses incurred in this case." Docs. 121, 122, 123.

account,[48] the disbursements from that trust account to the law firm's operating account, and the balance of fees owed to the law firm:

| Fees and Costs Billed | Deposits from Debtor to Trust Account | Disbursements Made from Trust Account to Operating Account | Running Balance of Fees Owed after end of Month |
|---|---|---|---|
| 9/9-9/30/2025 $2602.08 | | | $2602.08 |
| 10/2025 $8416.12 | $5000 on 10/8/2025 | $2000 on 10/10/2026 | $9018.20 |
| 11/2025 $11,523.92 | | $5000 on 11/7/2025 and $2000 on 11/26/2025 | $13,542.12 |
| 12/2025 $2630.00 | $5000 on 12/6/2025 and $5000 on 12/28/2025 | | $16,172.12 |
| 1/2026 $8105.89 | $5000 on 1/26/2026 | $10,000 on 1/21/2026 and $5000 on 1/31/2026 | $9278.01 |
| 2/2026 $7331.28 | $5000 on 2/28/2026 | $5000 on 2/9/2026 | $11,609.29 |
| 3/2026 $5293.63 | | | $16,902.92 |
| 4/2026 $3580.00 | | | $20,482.92 |
| 5/1-5/20/2026 $5157.94 | $15,000 on 5/21/2026 | | $25,640.86 |
| | $5000 on 6/22/2026 | | Unknown after 5/20/26 as billing ends on that date. |

Based on this table, focusing solely on the disbursements from the trust account to the operating account, the Court concludes the law firm paid itself in accordance with this Court's Local Rule on monthly compensation. In other words, assuming the Court only looks at the payments to the operating account from the trust

[48] This table does not include the deposit of settlement funds into the trust account.

account, the law firm was always owed more than what it transferred to itself out of the trust account and did not run afoul of the ten percent holdback required by D. Kan. LBR 2016.1.

## II. Conclusions of Law

### A. Jurisdiction and Burden of Proof

The employment and compensation of officers of the estate is governed by §§ 327, 329, and 330 and Rules 2014 and 2016 and both issues are core matters under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"), over which this Court may exercise subject matter jurisdiction.[49] Venue is proper in this District.[50]

The party seeking compensation under the Bankruptcy Code has the burden of proof on all issues related to the fee application.[51] Counsel has the duty to perform the obligations under the Code with respect to compensation, and to show that the proposed terms and conditions of employment are reasonable.[52]

---

[49] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G), and Amended Order of Reference, D. Kan. S.O. 13-1.

[50] 28 U.S.C. § 1409(a).

[51] *See In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013) ("The burden is on the party requesting fees to establish that its request is reasonable."); *In re Kitts Dev., LLC*, 474 B.R. 712, 719-20 (Bankr. D.N.M. 2012) ("The party seeking an award of compensation bears the burden of demonstrating that the services provided were actual, necessary, and beneficial to the estate.").

[52] *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997).

## B. Compensation of Estate Officers Generally and Law Firm Disclosure Requirements

A Chapter 11 small business debtor who elects to proceed under Subchapter V of Chapter 11 may employ an attorney to represent or assist the debtor in possession in performing its duties during the Chapter 11 case, subject to court approval thereof.[53] Under § 329(a), an attorney representing a debtor in a bankruptcy case must "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." Under Rule 2016(b), within fourteen days of the petition, every debtor's attorney must file and send to the U.S. Trustee the statement required by § 329. Supplemental statements must then be filed within fourteen days after any payment or agreement to pay not previously disclosed.[54]

Compensation is then further governed by § 330. Under § 330(a)(1), this Court may award to a professional employed under § 327 the "reasonable compensation for actual, necessary services rendered." The Court may award less

---

[53] § 327(a) ("the trustee, with the court's approval, may employ one or more attorneys . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title"); § 1107 (rights of debtor in possession); § 1184 (stating that a subchapter V "debtor in possession shall have all the rights . . . and powers, and shall perform all functions and duties . . . of a trustee serving in a case under this chapter").

[54] Rule 2016(b)(2) ("Disclosing Compensation Paid or Promised to the Debtor's Attorney. . . . (2) Supplemental Statement. Within 14 days after any payment or agreement to pay not previously disclosed, the attorney must file and send to the United States trustee a supplemental statement.").

compensation than is requested.[55] Rule 2016 also governs the procedure for applications for compensation. Under subsection (a) of Rule 2016, an entity seeking compensation, interim or final, must file an application with a detailed statement of the services rendered, time expended, and expenses incurred, and the amounts requested.[56]

Finally, under § 331, an attorney whose employment has been approved by the Court may seek interim compensation from the Court, prior to final approval of that compensation under § 330. This District has adopted LBR 2016.1 relating to interim compensation. Pertinent here, subsection (a) of LBR 2016.1 permits counsel employed in Chapter 11 cases to "file a separate motion for monthly payment of fees and expenses." Under subsection (b), a motion may request up to 100% of the fees and expenses be paid monthly, but if so, the professional must "hold no less than 10% of the fees in trust pending the court's approval of an interim or final fee application," unless ordered otherwise.

---

[55] § 330(a)(2).

[56] Rule 2016(a) requires: "an application showing: (A) in detail the amounts requested and the services rendered, time spent, and expenses incurred; (B) all payments previously made or promised for services rendered or to be rendered in connection with the case; (C) the source of the paid or promised compensation; (D) whether any previous compensation has been shared; (E) whether an agreement or understanding exists between the applicant and any other entity for sharing compensation for services rendered or to be rendered in connection with the case; and (F) the particulars of any compensation sharing or agreement or understanding to share, except with a member or regular associate of a law or accounting firm."

## C. Debtor Reporting Requirements

A debtor has mandatory reporting requirements imposed by the Code. Under § 1106(a)(1), a Chapter 11 trustee is required to perform the duties required by § 704(a)(8). Section 1184 then dictates that the Subchapter V debtor in possession has the rights and duties of a Chapter 11 trustee. Under § 704(a)(8), "if the business of the debtor is authorized to be operated," then "periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires" must be filed. Rule 2015(a)(3) also requires a debtor in possession to file periodic financial reports.[57] The U.S. Trustee is required to supervise the administration of Chapter 11 cases, including a debtor's performance of these duties[58] and collect a fee on disbursements.[59]

In addition, Section 345 governs the "[m]oney of estates." It states, in pertinent part:

> (a) A trustee in a case under this title may make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.
>
> (b) Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested--
> (1) a bond--

---

[57] Under Rule 2015(a)(3), a "debtor in possession must . . . (3) file: (A) the reports and summaries required by § 704(a)(8)."

[58] 28 U.S.C. § 586(a)(3).

[59] 28 U.S.C. § 1930(a)(6).

. . . ; or
(2) the deposit of securities of the kind specified in section 9303 of title 31;
unless the court for cause orders otherwise.

Under this section, a debtor in possession may deposit funds to "yield the maximum reasonable net return," taking safety into account, and the debtor must either use insured or bonded accounts unless the Court orders otherwise for cause.

In addition, a debtor and the debtor's counsel have a fiduciary responsibility to the estate.[60] This Court has previously held that subsections (a) and (b) of § 345 must be read together, and "while estate assets may be invested outside of the debtor's operating accounts, those outside of the ordinary course of operations must 'yield the maximum reasonable net return.'"[61]

**D. Application of General Standards in this Case**

First, although a delineation of deposits into the law firm's trust account versus payments out of that trust account to the law firm's operating account are addressed above, the U.S. Trustee is not challenging the appropriateness of the law firm's compliance with D. Kan. LBR 2016.1 or its compliance with the Cout's Order granting monthly compensation. In other words, the U.S. Trustee does not challenge the transfers of funds from the trust account to the law firm's operating account for legal fees. Likewise, the U.S. Trustee does not challenge the transfer of

---

[60] *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997) ("Because of the unique nature of the bankruptcy estate, the debtor in possession is considered a fiduciary of that estate. For the same reason, courts have imposed a fiduciary duty upon counsel for the debtor in possession.").

[61] *In re Carr's Plumbing & Maint., LLC*, No. 26-10101, 2026 WL 2767179, at *6 (Bankr. D. Kan. Sept. 16, 2026) (quoting § 345(a)).

funds from the trust account to make Debtor's plan payments. The Court therefore does not focus on the transfer of funds out of the trust account. Rather, the Court's focus is on the deposit of funds *into* the trust account.

That said, although the Court recently ruled that the deposit of settlement funds into a debtor's attorney's trust account was not appropriate in *In re Carr's Plumbing and Maintenance, LLC*,[62] the deposit of settlement funds into the trust account in this case is also not currently at issue in the U.S. Trustee objection to the law firm's fee application. The Court here is assessing the U.S. Trustee's argument that the fees should be denied (and that funds transferred by Debtor into the trust account should be disgorged) based on Rule 2016(b) disclosure failures.

To make that assessment, the Court must first determine what Debtor's deposits into the trust account were—i.e., were they retainers for the future payment of fees? A security retainer "secures payment of fees for future services that the attorney is expected to render."[63] A retainer is "not a present payment for future services, but is property of the bankruptcy estate that will be earned in the future."[64] The attorney can "apply for compensation for services rendered against the retainer," and at the end of the representation, "any unearned portion of the

---

[62] *Id.* at *1. In *Carr's Plumbing & Maint., LLC*, the Court concluded a Chapter 11 debtor generally must hold estate funds in its own operating accounts unless the Court authorizes an exception for cause, *id.* at *7, and that undesignated settlement funds may not be placed in counsel's trust accounts for indeterminate periods because the practice impairs a debtor's reporting requirements, *id.* at *6-7. The decision was issued after the deposit of settlement funds into the law firm's trust account in this case.

[63] *In re Landau*, No. 20-21114-11, 2021 WL 2523992, at *4 (Bankr. D. Kan. May 5, 2021).

[64] *Id.*

retainer is returned to the estate."[65] If the postpetition payments to the trust account—the deposits—were a retainer, the Court easily concludes they should have been timely disclosed via a Rule 2016(b) disclosure.[66]

The evidence here did not show that the postpetition deposits from Debtor into the law firm's trust account were intended as postpetition retainers or were a "not previously disclosed" payment or compensation agreement. Rather, the evidence was that the law firm's trust account was being used by Debtor as a savings account. It appears Debtor deposited funds into the trust account when and as she had extra funds available; like what an individual might do with extra funds in an "operating account"—move those extra funds into a savings account. Here, the savings account was the law firm's trust account.

As the U.S. Trustee points out, Debtor and the law firm admit part of the reason Debtor made the deposits was to "preserve funds" for the future payment of administrative expenses. But the Court does not equate this admission with a conclusion the deposits were postpetition retainers. The deposits were simply a way to park extra money in a savings account. That parked money could be used in the

---

[65] *Id.*

[66] *E.g., In re CLST Enters., LLC*, 672 B.R. 187, 200-01 (Bankr. S.D.N.Y. 2025) (a $30,000 postpetition retainer, undisclosed other than in the monthly operating report, violated Rule 2016(b) and § 330); *see also In re Brandenburger*, 145 B.R. 624, 627 (Bankr. D.S.D. 1992) ("[W]henever an attorney's fee arrangement with a debtor changes or whenever he receives a retainer or other form of compensation not previously disclosed, the attorney must file a supplemental disclosure of compensation. A fee application is not a substitute for this disclosure."). *Cf. In re Lacy*, 306 F. App'x 413, 420 (10th Cir. 2008) (affirming the denial of fees where the debtor's counsel failed to disclose a retainer agreement). The "default sanction" for fee disclosure failures is "full disgorgement." *SE Prop. Holdings, LLC v. Stewart (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020).

future for the payment of administrative expenses, but it could also be used for the payment of any expenses (e.g., plan payments) as they arose. The law firm had authority to collect and apply monthly compensation under D. Kan. LBR 2016.1, and complied with that Rule, and no new or additional fee arrangement was made that would require new disclosure.

Because the Court concludes the postpetition deposits from Debtor to the trust account were not postpetition retainers, the Court also concludes no Rule 2016(b) disclosure was required. Rule 2016(b) requires a supplemental statement within fourteen days "after any payment or agreement to pay not previously disclosed." The facts presented here show that the deposits into the trust account were not payments "not previously disclosed." The U.S. Trustee's objection to the Final Application on that basis is overruled. But that is not the end of the matter.

First, the Court concludes Debtor consistently violated the Chapter 11 reporting requirements. The law firm candidly admits it asked Debtor to make the monthly payments to the trust account so she could later prove, if challenged by the U.S. Trustee, that she could consistently make monthly plan payments. Less clear is what kind of arrangement the law firm had with Debtor for the periodic transfer of the Debtor's funds from the trust account to the operating account for the payment of the law firm's fees.[67] But regardless, by having Debtor move money out

---

[67] Mr. Lazzo repeatedly testified the deposits from Debtor to his trust account were not exclusively for the payment of his fees, and Debtor understood they could be used for fees, adequate protection payments, or plan payments. But no written agreement governing this understanding was introduced.

of her bank operating account and into the lawyer's trust account, the Debtor was no longer accurately accounting in her monthly operating reports for her total estate funds. Her reports, which did not include the funds in the law firm's trust account, were therefore not accurate. They did not correctly indicate what was paid for professional fees versus what was simply being saved in her law firm's trust account.

Second, the practice of using a trust account as a debtor savings account is not permissible under the Code. As this Court previously held in *In re Carr's Plumbing and Maintenance, LLC*, "the overall structure of the Bankruptcy Code indicates debtors should hold their funds in their own accounts unless a court authorizes an exception for cause."[68] Putting a debtor's money—estate property—into a lawyer's trust account rather than the debtor's operating account is contrary to Code requirements governing monthly operating reports, as well as the requirements of § 345 and § 363(b)(1), the latter of which permits a debtor to use property of the estate outside of the ordinary course only after giving notice to all creditors and a hearing.[69]

The remedy for the above failures is harder to fashion. If the Court was ruling earlier in the case, it would require the full amount of the postpetition

---

[68] 2026 WL 2767179, at *7.

[69] *Id. See also In re Lakeside Mgmt., L.L.C.*, No. 01-20661, 2001 WL 35814439, at *2 (Bankr. D. Idaho Aug. 2, 2001) (rejecting a proposed procedure where Chapter 11 debtor would pay counsel's monthly bills when funds were available and funds would be deposited into trust account in part because the approach "deprives the Debtor of ready access to its unencumbered operating funds").

deposits be turned back over to Debtor to be placed in a § 345 account as required by the Code. The Court would also require correction of the previously filed monthly operating reports. But here, the Chapter 11 plan has already been confirmed. The law firm is owed significantly more in fees at this point than the amounts deposited by Debtor. It accomplishes nothing to have counsel return the deposits to Debtor simply to have Debtor turn around and return them.

But this Court does have an independent duty to review fee requests.[70] After undertaking that review, the Court denies $2870 of the requested fees. First, although counsel testified at the evidentiary hearing that Debtor herself prepared her monthly operating reports and the law firm reviewed them prior to filing, the itemized statements supporting the fee requests indicate otherwise.[71] In October

---

[70] *Mkt. Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1246 (10th Cir. 2013) ("Section 330 provides the court with the ability to declare a fee unreasonable and to independently determine reasonable fees.").

[71] Mr. Lazzo testified that the law firm keeps contemporaneous time records, and so presumably the itemizations attached to the fee applications are more reliable than the testimony of Mr. Lazzo at the evidentiary hearing many months later.

2025,[72] November 2025,[73] February 2026,[74] and March 2026,[75] counsel logged time for reviewing Debtor's bank records and preparing and filing the monthly operating reports. The reports were inaccurate. The monthly operating reports were not accurate until the March 2026 monthly operating report, filed in April 2026. Because the Court concludes the September 2025 through February 2026 monthly operating reports had significant deficiencies, as outlined above, the Court declines to award fees for their preparation and filing. The Court therefore denies the fees requested for these entries.[76]

---

[72] *See* Doc. 58-1 p. 5 (itemizing one hour at $350 on October 24, 2025, for: "Office conference with client to prepare operating report. Prepare and execute initial operating report. Finalize and directions to file."); Doc. 58-1 p. 6 (itemizing one hour at $350 on October 31, 2025, for: "Reviewing October bank records. Begin to prepare October monthly operating report. Call to client to discuss disbursements.").

[73] *See* Doc. 58-1 p. 7 (itemizing one-half hour at $175 for "Teleconference with client regarding financial information from October operating report, October disbursements, issues raised, recommended action."); Doc. 58-1 p. 8 (itemizing one and a half hours for $525 on November 11, 2025, for: "Preparing monthly operating report for October. Meet with client to review. Directions to upload."); Doc. 58-1 p. 11 (itemizing one hour on November 25, 2025, for $350 for: "Review client's bank records. Preparing November operating report for client's approval.").

[74] *See* Doc. 95-1 p. 7 (itemizing one and a half hours for $525 on February 11, 2026, for: "Review and study clients [sic] December and January bank records. Calls with client. Preparing monthly operating reports for clients [sic] review and approval.").

[75] *See* Doc. 95-1 p. 13 (itemizing 0.9 of an hour on March 3, 2026, for $315 for: "Reviewing clients bank records. Discuss deposits and disbursements. Prepare monthly operating report. Forward to client for approval."); Doc. 95-1 p. 16 (itemizing 0.8 on March 31, 2026, for $280 for: "Reviewing client's bank records. Preparing monthly operating report for client's review and approval.").

[76] *See, e.g.*, *In re Wood*, 408 B.R. 841, 848 (Bankr. D. Kan. 2009) (noting a bankruptcy court may conclude agreed upon compensation is excessive based on "conduct by the attorney that diminishes the value of the legal services").

In addition, the Court declines to award the fees requested for the preparation of the Interim Application and the Order thereon.[77] The information reported in the Interim Application was incomplete, and therefore incorrect. The Court therefore denies an additional $940 of the fees requested.

The Court also denies fees for the two motions filed by counsel shortly after Debtor's plan was confirmed, where counsel  asked for entry of discharge and final decree.[78] Those motions were prematurely filed under the Code. The Court will not award the $185.20 in fees and costs requested for those motions.

And finally, the Court will not award fees in the future for the type of serial corrections counsel prepared and filed to the Interim Application, the Final Application, and the Trial Brief,[79] and will not award fees for the preparation and filing of the Third Supplemental Disclosure and corrections thereto.[80] These documents should have been correct and accurate at the time they were filed. Counsel should not charge Debtors for the preparation and filing of these documents.

---

[77] *See* Doc. 95-1 p. 4 (itemizing 1.7 hours for $595 on January 21, 2026, for: "Drafting 1st fee application. Compile billing records to exhibit in support."); Doc. 95-1 p. 9 (itemizing 0.7 hours for $345 on February 16, 2026, for: "Drafting order allowing first fee application. Directions to upload with Court.").

[78] *See* Doc. 99 p. 3 (itemizing one-half hour on May 14, 2026, for $175 for: "Drafting Motion for entry of discharge and request for final decree. Directions to upload and serve."); Doc. 99 p. 3 (itemizing copy expense of $10.20 for: "Motion Final Decree; Motion Discharge and Notices.").

[79] *See* Doc. 99 (Supplement to Debtor's Final Application); Doc. 113 (Notice of Correction to Debtor's First Interim Application for Allowance and Payment of Attorney's Fees and Expenses (Dkt. 58)); Doc. 118 (Notice of Correction to Debtor's Trial Brief).

[80] *See* Doc. 112 (Third Supplemental Disclosure); Doc. 117 (Notice of Correction to Third Supplemental Disclosure).

All Chapter 11 debtors counsel have a fiduciary obligation to the estate.[81] All counsel also have a duty of candor to this Court to ensure all pleadings and documents filed in this Court are factually accurate.[82] Debtor's counsel should not use a trust account as a secondary savings account for a Chapter 11 debtor.

## III. Conclusion

Debtor failed in her reporting requirements by filing monthly operating reports that were inaccurate and incomplete. Counsel not only failed to review and/or prepare those reports to ensure their accuracy, but also failed to reconcile them with the law firm's own trust account records. In addition, counsel filed multiple applications, disclosures, and documents that later needed to be corrected, sometimes serially, and the Court was left to reconstruct the erroneous and complicated records.

Despite all that, the U.S. Trustee's objection to the fee application was limited and based only on an alleged failure to disclose postpetition retainers under Rule 2016(b). That objection was not supported by the record established at the evidentiary hearing. The postpetition deposits from the debtor to the law firm's trust account were not postpetition retainers. The law firm had authority to collect

---

[81] *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (B.A.P. 10th Cir. 1997) ("Because of the unique nature of the bankruptcy estate, the debtor in possession is considered a fiduciary of that estate. For the same reason, courts have imposed a fiduciary duty upon counsel for the debtor in possession.").

[82] *See, e.g.*, Rule 9011(b)(3) (by presenting a pleading, motion, or other document, whether by signing or filing, the attorney certifies that to the best of the person's "knowledge, information, and belief formed after an inquiry reasonable under the circumstances" that the "factual contentions have evidentiary support").

and apply monthly compensation under this Court's Local Rule 2016.1, and there was no new payment or agreement to pay that was not previously disclosed.

The Court therefore overrules the U.S. Trustee's objection,[83] and grants in part and denies in part the Final Application,[84] denying a total of $3995.20 of the fees and costs requested. In addition, the law firm acknowledges the initial payment of $2000 transferred to its operating account from its trust account on October 10, 2025, was improper because it was made prior to entry of the Court's Order permitting monthly compensation, so the Court also orders that $2000 to be disgorged by the law firm.

**It is so ordered.**

###

[83] Doc. 98.

[84] Doc. 95.